UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA


Government.


v.                                    Case No. 16-mj-30339


SEBASTIAN GREGERSON,


Defendant.

_____/


DETENTION HEARING


BEFORE THE HONORABLE MAGISTRATE-JUDGE
MONA K. MAJZOUB
United States District Judge
231 US Courthouse & Federal Building
635 Lafayette Boulevard West
Detroit, Michigan
Thursday, August 4, 2016


APPEARANCES:

FOR THE GOVERNMENT: KATHLEEN CORKEN


FOR THE DEFENDANT:  DAVID M. THOLEN


TRANSCRIBED BY:
Carol S. Sapala, RMR, FCRR
313.961.7552
www.transcriptorders.com


Usa v Gregerson 16-mj-30339

C O N T E N T S

---

IDENTIFICATION                                    PAGE

WITNESSES

None.

Detention Hearing
Proffer by Ms. Corken                               5
Proffer by Mr. Tholen                              13

Argument by Mr. Tholen                             21
Argument by Ms. Corken                             36
Rebuttal Argument by Mr. Tholen                    42

The Court's Ruling                                 45


Certificate of Transcriber                         47

Detention Hearing  8-4-2016

E X H I B I T S

_____

IDENTIFICATION                        OFFERED

Government's Exhibits 1-30
Items seized during search warrant              5

Detention Hearing  8-4-2016

1              Detroit, Michigan

2              Tuesday, May 25, 2011

3              3:05 p.m.

4              (The transcriber was not

5              present at this hearing)

6              THE CLERK:  Court calls case number 16-30339

7    United States of America versus Sebastian Gregerson.

8              MS. CORKEN:  Good afternoon, Your Honor.

9    Kathleen Corken on behalf of the United States.

10             MR. THOLEN:  Good afternoon, Your Honor.  May

11   it please the Court, David Tholen on behalf of

12   Mr. Gregerson.  He's present, Your Honor.  We are ready

13   to proceed.

14             THE COURT:  Thank you.

15        Will the defendant please state his name to the

16   court.

17             THE DEFENDANT:  Sebastian Gregerson.

18             THE COURT:  Thank you, Mr. Gregerson.

19        Ms. Corken.

20             MS. CORKEN:  Your Honor, this is the date and

21   time set forth for the detention hearing.

22        The Government intends to proceed by proffer with

23   the Court's permission.  It's my understanding the

24   defense has no objection.

25

Detention Hearing  8-4-2016

1        THE COURT:  Very well, you may.

2        MS. CORKEN:  Your Honor, as for our proffer --

3        THE COURT:  One minute.

4    (A discussion was held at the bench

5    at side bar with all parties)

6        THE COURT:  Ms. Corken, you may proceed.

7        MS. CORKEN:  Thank you, Your Honor.

8    Your Honor, as part of our proffer, we'll be

9 relying upon the affidavits in support of the Complaint,

10 the Government's sealed filing, the Pretrial Services

11 Report which I would note recommends pretrial detention

12 of the defendant as well.

13    And in addition, Your Honor, the Government is

14 relying upon some exhibits, Government's Exhibit 1

15 through 30 that I have provided to defense counsel.

16        MR. THOLEN:  That's right, Your Honor.

17        MS. CORKEN:  And I would like to hand up to

18 the Court if I could.

19        THE COURT:  Thank you.

20        MS. CORKEN:  Your Honor, additionally, as far

21 as the Government's proffer goes, I would like to offer

22 the following facts related to a search warrant that was

23 executed on defendant's residence on July 31st.

24    Among the items recovered during that search were

25 seven rifles, two of which were AK-47's, one tactical

Detention Hearing   8-4-2016

1   shotgun, two handguns, neither of which were registered,

2   a hatchet, road spikes, full face ski masks, some 20

3   knives, including multiple fixed blade knives, some of

4   which were or are specifically marked for tactical or

5   combat use; included among these as well were two

6   machetes and, in addition, thousands of rounds of live

7   ammunition for the weapons, including hundreds of rounds

8   of AK-47 ammunition.

9        Your Honor, as far as Government's argument, the

10   information in the Government's proffer clearly

11   establishes that this defendant is a danger to the

12   community and that there's no condition or combination

13   of conditions that would assure the safety of the

14   community.

15        As the Court is well aware, the Bail Reform Act

16   sets forth a number of factors to be considered in

17   making the determination as to whether to be released

18   for trial.  One of the factors is the nature and

19   circumstances of the offense.

20        In this case, the defendant is charged with

21   unregistered possession of a destructive device as well

22   as receipt of explosive materials.  The items involved

23   in those offenses are inherently dangerous.

24        This defendant received and possessed five high

25   explosive grenades, these are bombs, bombs that can be

Detention Hearing  8-4-2016

1   thrown by hand.

2        The five grenades that the defendant obtained were

3   M67 grenades.  Government's Exhibit 1 is a photograph of

4   one of those grenades.

5        The M67 grenade has a fatality rate of 16 feet and

6   the serious injury radius of 49 feet.  Fragments from an

7   M67 grenade can disburse as far out as 820 feet.

8        The grenade by nature is indiscriminate, it is

9   designed to kill or injure everyone within the strike

10  range of it.

11       In addition, Your Honor, the only purpose for

12  having a grenade is to kill or injure individuals.

13  There's no non violent purpose for a grenade at -- which

14  is unlike firearms.

15       The grenade is -- its utility, its purpose and

16  function is to cause death and injury.  That fact alone

17  the Government would submit is sufficient to establish

18  the defendant's dangerousness, but there is certainly

19  additional evidence to support the conclusion as to his

20  dangerousness.

21       Your Honor, the defendant indicated to the

22  undercover that five grenades was just a start, that he

23  was interested in purchasing additional grenades beyond

24  that.

25

Detention Hearing  8-4-2016

1      Now not only was he interested in purchasing

2  additional grenades, but he was also interested in

3  purchasing the Claymore mine.

4      And Government's Exhibit Number 2 is a photograph

5  of a Claymore mine that the defendant described as a

6  magical piece of equipment and said that he would pay

7  $250 for it.

8      The Claymore mine, Your Honor, is a, a mine that is

9  detonated or fired by remote control and it shoots steel

10  balls like a shotgun in an arc around it. Inside the

11  mine is C4 explosive that is behind a matrix of hundreds

12  of steel balls and when it's detonated, the explosion

13  drives the balls forward at high velocity in this arc.

14      With a Claymore mine it fires these steel balls

15  that are fragmented upon detonation out to 110 yards.

16  Like grenades a mine is, obviously, indiscriminate.

17  When used it kills or injures anything within striking

18  range.

19      Just as with grenades, the sole purpose of a

20  Claymore mine is to kill and injure people.  I think

21  that that fact that these are items that are inherently

22  dangerous and whose purpose is to injure and kill is

23  very significant because I think it sheds light on the

24  motive and reason that the defendant possesses this

25  arsenal that has been recovered from his home.

Detention Hearing   8-4-2016

1        As you know, Your Honor, the Complaint Affidavit

2   lays out that the defendant in the past 16 months

3   purchased a number of weapons, ammunition, tactical gear

4   and tactical training materials.

5        In the past six weeks he's purchased three guns.

6        And in the search warrant executed after the

7   defendant's arrest, the -- the agents are still

8   reviewing the items.  Even now we can tell that the vast

9   majority of what we know he purchased was recovered in

10  the search warrant plus a whole lot more.

11       I'm not going to go through every photograph that I

12  have provided to the Court, but I do want to point out a

13  few of the photographs.  And I can also give the Court

14  an opportunity to look through those photographs if

15  you'd like.

16            THE COURT:  All right.  Why don't you point

17  out what you'd like to point out.

18            MS. CORKEN:  Okay.

19       Government's Exhibit 5, Your Honor, that is one of

20  the assault rifles the AK-47s that was recovered, that

21  is one of them.

22       Government's Exhibit 9 is a tactical shotgun that

23  was recovered.

24       Government's Exhibit 11 is a Caltrop sub 2000

25  9 millimeter gun.  This is a gun that as it's depicted

Detention Hearing  8-4-2016

1  in the photograph folds in half and is so -- one of the

2  purposes is you can conceal the fact that it is a long

3  barreled gun.

4      Exhibit 12 is when it is unfolded.

5      Exhibit 13 are the road spikes.

6      Exhibit 16 depicts the AK-47 magazines that were

7  recovered within a bag that the defendant described at

8  one point the U.C. as his go-to-bag.

9          MR. THOLEN:  Your Honor, I'll object.  I

10  understand it's the Government's argument.

11      I believe that any information the Government

12  decided to proffer about the undercover, it was a

13  discussion and it's unclear if the undercover described

14  that item or not.

15          MS. CORKEN:  It was the defendant.

16          MR. THOLEN:  I'll revisit that, judge.

17          MS. CORKEN:  Exhibit 22, Your Honor, is a

18  tactical vest, tactical vest and other items.

19      And Exhibit 30 is a number of items including body

20  armor with military grade plates and handcuffs.

21      Your Honor, I would just like to focus on some of

22  the statements that the defendant made to the undercover

23  that, again, I believe shed light on the purpose for

24  which he has this -- these items in his house, this

25  amassing of these weapons and ammunition as well as his

Detention Hearing  8-4-2016

1    purchase of the grenades.

2         On July 15th as the Complaint Affidavit indicates,

3    the defendant showed the undercover a bag with the 240

4    rounds of AK-47 ammunition, described it as a

5    grab-and-go-bag.

6              THE COURT:  Hold on.

7         (After a short delay, the proceedings continued)

8              THE COURT:  All right.  If you'd start over

9    again with that statement.

10             MS. CORKEN:  Sure.

11        Your Honor, I was pointing out some statements that

12   indicate I believe or shed light on the purpose for

13   which the defendant acquired this enormous amount of

14   weapons and ammunition as well as the grenades; one such

15   statement he made on July 15th to the undercover

16   officer.

17             THE COURT:  Okay.

18             MS. CORKEN:  And he showed him a bag that was

19   the Government's Exhibit 16 that I just mentioned showed

20   him that bag.  It has -- that has a number of rounds of

21   a AK-47 ammunition, I believe it was 240 and described

22   it as that bag as a grab-and-go bag.  To me that means

23   grab and go and use.

24        He also told the U.C. that he purchased pouches for

25   tactical vests to insert the M67 grenades that he

Detention Hearing 8-4-2016

1  ultimately acquired. And, again, the plan there,

2  obviously, is to carry those grenades within a tactical

3  vest.

4      One other point; he expressed his desire to the

5  U.C. to purchase a 40 millimeter grenade launcher and 40

6  millimeter grenades for it which is illegal.

7      In the context of this conversation, he also said

8  he was interested in obtaining a particular type of 40

9  millimeter grenade launcher that can be mounted on a

10 rifle and said it was made for combat.

11     He also made reference to the use of the grenades

12 against law enforcement if they were to come for him.

13     So, Your Honor, we would submit that the fact that

14 the grenades themselves -- there's no purpose other than

15 to harm people, the arsenal that the defendant has

16 amassed that contains combat related items, those are

17 the knives that are designed or marketed for tactical

18 use and other items, the statements that he made to the

19 undercover that I've pointed out and others, the sealed

20 filing in particular, the mind set the -- and

21 information contained therein, I think all goes to show

22 that the defendant -- the defendant's actions in

23 possessing the grenades and other items that have been

24 found are not innocuous, that these are preparations for

25 some violent act; I think that's clear from the

Detention Hearing  8-4-2016

1   evidence.

2       Even if the Court would disagree I would go back to

3   my initial point.  Who, who isn't dangerous who

4   possesses grenades?  That alone would be sufficient.

5       Lastly, Your Honor, the weight of the evidence is

6   another factor I would just point out that in this case,

7   the evidence is overwhelming.  The -- all the

8   interactions with the undercover were reported, the

9   transaction which the defendant possessed the grenades

10  was also reported.

11      And so for all of those reasons, Your Honor, we

12  would ask the Court detain the defendant pre-trial.

13          THE COURT:  Thank you.  Mr. Tholen?

14          MR. THOLEN:  Thank you, Judge.

15      As I'm sure Your Honor can imagine, I take a

16  different view.  And I'm aware of the Pretrial Services

17  Report, I recognize that they are ultimately

18  recommending detention in this matter.  I'm going to

19  address both.

20      Issues pertaining to flight or lack thereof in my

21  estimate and I recognize I think the Government has put

22  most of its arguments behind the issue of danger.  So

23  this record is clear, I do want to address both.

24      Before I get to argument, I, too, wish to proffer

25  certain information for the Court's consideration in

Detention Hearing  8-4-2016

1   this matter.

2       It's duplicative, but I would also proffer the

3   Pretrial Services Report and a lot of the biographical

4   and family information that's in there.  In addition to

5   that, I'd guess I'd proffer the following.

6       Mr. Gregerson is 29 years old, born, raised and

7   lived most of his life in Michigan, specifically in the

8   Eastern District of Michigan.

9       His mother, father, sister and uncle, a grandmother

10  all live-in the same town outside of Ann Arbor.  I'm

11  using that generally, but the Pretrial Services Report

12  has the specific town that's involved.

13      Mr. Gregerson grew up as an avid outdoorsman as a

14  fisherman, as a hunter.  He spent time with his family

15  going fishing, going up to Houghton Lake to a family

16  member's cabin; that is part of the lifestyle of Mr.

17  Gregerson.

18      He attended Washtenaw Tech High School and it was a

19  joint program with Washtenaw Community College.  He got

20  both his high school degree and he got an associate's

21  degree.

22      Beyond that, he studied for at a time at Berea

23  College in Kentucky for about a year.  And more recently

24  within the last year or so, he took courses at Henry

25  Ford Community College in criminal justice.

Detention Hearing  8-4-2016

1       Mr. Gregerson is, as indicates in the Pretrial

2   Services Report, has what I believe to be substantial

3   family ties to this area.

4       He is married, his wife's in court today.  They've

5   been married for about five years.  They live together

6   in the City of Detroit.  I think the Court's aware of

7   the address, I know the federal Government is.  They

8   have two sons, twins that are four years old.

9       Obviously, Mr. Gregerson has great care and concern

10  for being there for his family, his wife and, also

11  taking care of his children I though the Court will take

12  this into consideration.

13      As indicated in the Pretrial Services Report,

14  unlike many of the cases the Court heard today, Mr.

15  Gregerson has no prior arrests, no prior criminal

16  convictions.  None.

17      Mr. Gregerson has a steady employment history over

18  the last 10 years; most recently he's worked at Wal-Mart

19  and Target.

20      Mr. Gregerson is -- his interests are of a prepper.

21  I don't know if the Court's familiar with that term

22  survivalist-type mentality.

23      He's an outdoorsman and he is, as evidenced by the

24  number of guns that he had at his residence, all legal

25  mind you, he is a gun enthusiast.

Detention Hearing  8-4-2016

1   He's also interested in military history, taken

2   classes in that.

3      In terms of survivalist, that goes kind of with his

4   camping and hunting, outdoors stuff.  He watches Bear

5   Grill, he watches Dual Survivor, shows of that nature,

6   even, you know, more fringe shows, if you will.  That's

7   all part of his interest and his lifestyle.

8      Mr. Gregerson has Red Cross certifications in CPR

9   and AED and he also has a certification from Red Cross

10  as an emergency medical responder.

11     The Court's heard a lot about firearms.  He does

12  collect firearms.  He's collected firearms a lot longer

13  then the last 16 months.  His father can document that.

14     Actually, quite frankly, the Federal Government can

15  because they pulled all the records of these purchases;

16  incidentally, were all done Mr. Gregerson's name, with

17  his credit card giving his address.  Zero attempt to

18  allude anyone and the Government knows that.

19     He collects firearms, takes firearm safety.  He's

20  an NRA member and has been so for five years.

21     In addition to that he is CPL holder and,

22  obviously, as this Court knows, you have to pass a

23  background check; he did all of that, that's all

24  verified.

25

Detention Hearing  8-4-2016

1        He has properly applied for all of the firearms

2   that were purchased that were taken out of his residence

3   and the Federal Government has the documentation, is

4   well aware of that.

5        And he had to pass -- basically they indicate even

6   in the Criminal Complaint when he was under surveillance

7   either through GPS technology or being physically

8   surveyed by FBI agents or other local police officers

9   when they watched him go to three unnamed stores, one of

10  them happened to be Dunham's, the other happened to be a

11  Dearborn outdoor store, watched him go in.

12       They talked to the store or the clerk or whatever

13  and they found out that lo and behold Mr. Gregerson had

14  applied as he's supposed to for purchase of a firearm

15  and that he'd been clear for the purchase.  In fact, he

16  was able to purchase a firearm.  That's all documented

17  in the Complaint.  There's absolutely nothing not legal

18  about that.

19       Mr. Gregerson by -- really corroborated by the

20  government's own investigation did exactly everything a

21  citizen gun purchaser is supposed to go do.

22       In fact, judge, the Government has provided the

23  Court with exhibits and it's 1 through 30 and I know

24  that the Government kind of call the Court's attention

25  to certain of those exhibits.

Detention Hearing  8-4-2016

1       But for Exhibits 1 and 2 everything else is legal,

2   everything else is absolutely 100 percent legal for

3   anyone that doesn't have a prior felony to exist.

4       In addition, I would proffer that Mr. Gregerson is

5   a Muslim, practicing Muslim, wasn't born a Muslim.  He

6   converted to Muslim.  It was somewhat of a gradual

7   change.

8       But when he was in high school outside of Ann

9   Arbor, he came into contact with a number of individuals

10  that were Muslim, he became friends with them.  His eyes

11  were open to that religion.  He decided it was the way

12  he wanted to lead his life.

13      Shortly after he left high school, he converted to

14  becoming a practicing Muslim.  He is a Muslim.  But he

15  was an outdoorsman, gun enthusiast, a hunter, fisherman

16  long before he became a Muslim.  He's both those things

17  but they're very self sufficient things.

18      I would also proffer that the Government has

19  suggested and used in one of its arguments they detailed

20  an arsenal that's a reason to detain Mr. Gregerson at

21  this point.

22      I would proffer that, well, the arsenal's been

23  removed from the residence.  In fact, the Court has

24  photograph pictures to demonstrate that.

25

Detention Hearing  8-4-2016

1    So to the extent that the Government believes that

2  arsenal and Mr. Gregerson's access to it makes him a

3  danger to the community, I suggest to Your Honor that we

4  can just cross that one off because that's been removed.

5    I did say, Your Honor, that all but two of the

6  Government's Exhibits and that was Exhibit 1 and 2 were

7  legal items, and all those exhibits from 3 to 30, those

8  are the things that have been removed from the home.

9    Government's Exhibit Number 1 is the illegal

10  grenade and that is illegal.  I don't dispute that that

11  was taken from Mr. Gregerson at the time of his arrest

12  when he met with the undercover agent on Sunday.  So he

13  doesn't have access to those grenades, the Federal

14  Government has those.  All right.

15    At the same time as part of that transaction there

16  were smoke grenades or smokers or something.  While I

17  have no interest, it's something that can legally be

18  possessed.

19    Well, the smoker grenades, those were also seized

20  by the federal Government at the same time.  Those are

21  out of his possession.

22    The Government has provided a picture in Government

23  Exhibit 2 of an item that's called a Claymore mine and

24  the Government offered some background information

25  regarding a Claymore mine.

Detention Hearing  8-4-2016

1       And what is interesting is that Government's

2   Exhibit Number 2 was never transacted, was never

3   arranged for any kind of sale between the undercover

4   agent and Mr. Gregerson.

5       And so this is a nice picture off The Internet but

6   the Government doesn't have this because they never

7   tried to sell it to Mr. Gregerson, so this is talk, all

8   right.  It was an idea, but this never was taken from a

9   home.  Mr. Gregerson never had possession of this.

10       I would also as part of my proffer before I get to

11   argument, I would indicate that I mentioned earlier two

12   of Mr. Gregerson's family members are present.  His wife

13   is present sitting next to his wife is his father.

14       His father lives with his wife and his family

15   members and daughter outside of Ann Arbor.  Mr.

16   Gregerson's wife lives at the residence in Detroit.

17       But both individuals -- it's my -- it's my request

18   that Your Honor consider granting Mr. Gregerson bond

19   I'll get to that, but both Mr. Gregerson's wife is

20   willing to take third-party custodianship of Mr.

21   Gregerson should this Court feel that's necessary.

22       And, as an alternative, Mr. Gregerson's father, he

23   has agreed to make his home available as a potential

24   bond address for consideration.

25

Detention Hearing  8-4-2016

1      In the event that happened, Mr. Gregerson, Senior,

2    would also take third-party custodianship of his son if

3    the Court thought that was necessary.

4      Your Honor, that concludes my proffer.  I'm

5    prepared to proceed to argument.

6              THE COURT:  Thank you.

7              MR. THOLEN:  Shall I?

8              THE COURT:  Please.

9              MR. THOLEN:  Thank you, Your Honor.

10     Your Honor, if I had not alluded to it, I believe

11   that the situation here, the Government is overstating

12   its case.

13     There's a charge in the Criminal Complaint -- it's

14   two charges and both deals with -- both charges, rather,

15   deal with the possession or the receipt of explosives.

16   For the purposes of our arguments, I'm not disputing

17   that.

18     I'm not disputing their explosives and I'm not

19   disputing it would be illegal for any of us to possess

20   those, but that's what the charge is, judge.

21     The Government's filed a document under seal that

22   goes way beyond that, but they haven't brought a charge

23   to support any of that information in that seal pleading

24   before Your Honor.  So first and foremost it would seem

25   to me we focus on the charged offense.

Detention Hearing  8-4-2016

1     Now this happened Sunday and the transaction

2  happened Sunday and the transfer of the smoker grenades

3  and then the other grenades that all happened Sunday

4  night and there was a take down.

5     The Government's had since Sunday, since they've

6  been investigating Mr. Gregerson for some 16 months now

7  that if they felt there was legitimate support to

8  supplement the Criminal Complaint with the charges that

9  I believe they allude to in the sealed pleadings,

10  they've had ample opportunity to do it.

11     It's Thursday, judge.  Mr. Gregerson first came to

12  court in this building on Monday.  They haven't done it.

13  So I take it that it's a concession on the Government's

14  part and that they believe that information as the Court

15  stated today really goes to danger with respect to the

16  instant offense rather than some other nebulous offense

17  out there that they haven't brought.

18     I think the Government overstates its case and what

19  is of grave concern to me in the information and the

20  sealed pleading as well as the information in the

21  Criminal Complaint is what the Government refuses to

22  give either you or me is the full context.

23     What we do know is an undercover agent.  What we

24  don't know, we know nothing about the undercover agent,

25  we don't the sex of the undercover agent, we don't know

Detention Hearing  8-4-2016

1   how they're employed.

2       We don't know the benefit that that agent was

3   getting from the FBI.  Were they being given money?  Was

4   their family relocated?  Were they being given

5   citizenship status or trying to get a sentence

6   reduction?  We don't know because the Government hasn't

7   deemed it important to tell us.

8       They didn't do it in the sealed proceeding and if

9   they had concerns about things, they could certainly

10  turn it over in a sealed proceeding, that's how we do

11  things.  They chose not to do that, they certainly

12  didn't do it in their Criminal Complaint.

13      What I suggest, Your Honor, it's a big question

14  mark and the Court should take that into consideration

15  in the balance of considering these statements that the

16  Government says, well, the undercover officer told us

17  that Mr. Gregerson said A, B, C.

18      Big question mark there because we don't know the

19  context, we don't have the full transcripts, we don't

20  have the full conversations.  They haven't brought the

21  undercover here so you could see, you could evaluate the

22  credibility of the undercover officer.

23      They could certainly set up a situation where the

24  undercover officer testifies behind a screen or

25  testifies *in camera*, but yet none of that's been done in

Usa v Gregerson 16-mj-30339

Detention Hearing  8-4-2016

1  this case.

2      I suggest that this Court should perhaps give that

3  some consideration in any weight or lack thereof that it

4  warrants to give to the undercover statements about what

5  Mr. Gregerson allegedly had said or what he allegedly

6  did.

7      By way of example, Judge, my point is I think if

8  the Court had the full picture, things wouldn't look as

9  concerning as the Government's kind of suggesting or not

10  kind of, they are suggesting it's very concerned.

11  Here's my example.

12      I was appointed to represent Mr. Gregerson on

13  Monday.  And Tuesday I found out from the Marshal's

14  Service that he was being held at the Dickerson

15  Facility.  I was able to go visit him at Dickerson

16  Facility.

17      Apparently while I was there, someone at my office

18  contacted the Marshals in an attempt to help me out not

19  knowing I was at Dickerson meeting with Mr. Gregerson

20  and was informed by someone at the Marshal's Service

21  that Mr. Gregerson's not at Dickerson, he's, in fact, en

22  route to Midland.  I know that not to be the case

23  because I was there for half a day with him.

24      Knowing that information, I went to meet with him

25  later a second time that same night Tuesday night.  I

Detention Hearing  8-4-2016

1   logged onto the computer, I checked Dickerson's files,

2   it showed him as still being there.

3       I got there at 6:30.  You check in with the guards

4   and whatnot.  They pulled him up on the computer and

5   then they looked and me and said is he a marshal's

6   prisoner.  I said of course he is.  They said they just

7   got him five minutes ago.  You just missed him.  Okay.

8       So next day I called, I find out where he was.

9   He's at Midland.  I went to Midland.

10      My point with this is this.  Some people, not me,

11  because I thought the Government had nothing to do with

12  that, I know the Marshals had no devious point moving

13  him like that.  But I'll tell you, judge, people that

14  don't know the system might think something's funny

15  about that.

16      Why are they moving this guy around?  Are they

17  trying to keep him away from his attorney?  Are they

18  trying to obstruct my ability to defend Mr. Gregerson.

19      I know better because I though the context -- in

20  fact, there was an article that came out this week my

21  boss was quoted in talking about how our clients get

22  transferred all around because I know the whole picture.

23  I know certainly it was nothing nefarious about that.

24      But, judge, you don't know and the Government's not

25  letting us know the whole picture of what went on beyond

Detention Hearing  8-4-2016

1   this undercover officer and allegedly what Mr. Gregerson
2   said.  I think if we knew the full picture, it would not
3   appear in the manner the Government's suggesting.

4      I've already indicated that of course the uncover's
5   not here, he's being hidden or protected or concealed by
6   the federal Government.

7      What I suggest is in 16 months of investigation
8   against Mr. Gregerson, these are the things the
9   Government did.  Okay?  One thing they did was GPS track
10  him for that whole time period.  Okay.

11     Another thing they did was have people monitoring
12  the GPS tracking.  And sometimes we know from the
13  criminal complaint actually following Mr. Gregerson to a
14  sporting goods store and back to his home.  So we know
15  that was agents actually doing that as opposed to just
16  tracking a machine.  They did that.

17     They also -- it appears recorded telephone
18  conversations that Mr. McGregor (sic) had at least with
19  respect to the undercover officer.  It's possible, it's
20  possible, but I don't know that they tapped his phone.
21  I'm not entitled to know that.

22     Beyond that, too, judge, that they did a search
23  warrant and I think this is referenced in some sealed
24  materials but they got access to email communications
25  and, you know, Internet practices if you will.

Detention Hearing  8-4-2016

1      They have done all of that and the kicker, judge,

2   is they introduced the confidential informant on top of

3   everything else.

4      So what I would suggest to Your Honor is in 16

5   months what the Government succeeded in making a case on

6   was that last Sunday night Mr. Gregerson allegedly met

7   up with a confidential informant or whatever U.C.E.

8   whatever that stands for they want to use that for, for

9   a transaction involving half legal smoke grenades and

10   half illegal grenades, that's what we got.

11      And there is nothing in my experience the

12   Government put its best case -- best case forward, it

13   puts it's best case forward in the Complaint; they

14   bolstered that in a sealed information.  So bring it.

15   If they have more, bring it.

16      I've requested transcripts, I've requested

17   summaries of discussions, I've requested any emails.  So

18   because none of it's been provided and yet the

19   Government has had the time to go over all of that and

20   hand pick out statements that they either put in quotes

21   when they want to attribute it to Mr. Gregerson or they

22   just say the undercover said this or said that.  All

23   right.

24      It gives me reason and I do believe reason I think

25   it's reasonable for me to come to this conclusion that

Detention Hearing   8-4-2016

1   they've gone through all of that and that's the best

2   they could do.

3        And my point is during all that time in 16 months

4   there's been no violent act on behalf of Mr. Gregerson

5   or at his behest against any individual and he's been

6   closely watched, closely watched by the Federal

7   Government through all those mechanisms I just listed.

8   Nothing.

9        In fact, at the time of his arrest, the Court might

10  look to that at the time of his arrest he didn't attempt

11  to flee or allude arresting officers.

12       He had -- as a CPL holder, he had his firearm with

13  him.  He didn't attempt to use that against the

14  officers.  No struggle, no resistance, didn't try to

15  drive away, not at all.

16       Specifically, judge, I'll take flight first.  I

17  think there's absolutely no flight risk in this case.

18  Mr. Gregerson is a U.S. citizen, Pretrial verified that

19  Mr. Gregerson doesn't have a passport.  Never had a

20  passport.

21       Mr. Gregerson doesn't travel internationally.

22  There's some reference five years ago he might have gone

23  to Canada.  Judge, we've got to correct the record on

24  this.

25

Detention Hearing  8-4-2016

1      Mr. Thomas from Pretrial in talking to Mr.

2   Gregerson we need Pretrial to be aware and I want Your

3   Honor to in case this factors in.

4      When he was in third grade, he took a class trip to

5   England that's not reflected in a Pretrial Services

6   Report.  So that would be some international travel but

7   that's what we got right there.  But, of course, the

8   Government's been watching him so I suspect they know

9   that.

10      He has a local bond address with his wife and two

11   sons in Detroit, I've talked about that.  Quite frankly,

12   that's been verified because the undercover officer went

13   there.  In fact that's an interesting point.

14      The Government argues how dangerous Mr. Gregerson

15   is in this arsenal of weapons and everything.  But as

16   they indicate in their pleadings, their superman

17   undercover agent was there mid-July, didn't do a damn

18   thing.

19      Didn't -- they could have got a search warrant

20   based on that alone, they didn't do it.  They obviously

21   in my mind didn't think Mr. Gregerson posed that kind of

22   threat despite what the Government's calling the arsenal

23   of weaponry he had.

24      In the pleadings the Court has the sealed and

25   unsealed pleadings the information the Government's

Detention Hearing  8-4-2016

1    relying on to kind of tie this all up in a bow they had

2    their statements before mid-July but they chose not to

3    act.

4        With respect to flight in addition to what I'm

5    calling the local bond address with his wife, I

6    indicated he had a secondary address outside of Ann

7    Arbor with his parents that can be verified by Pretrial.

8    He's got a employment in this area.

9        What I think's so important, Your Honor, is he has

10   lived as Sebastian Gregerson.  He's got his Michigan

11   I.D. driver's license in that name, that's what the

12   agents knew him as.  When he was arrested he had that

13   I.D. with him.

14       His concealed pistol license is in that name, all

15   his firearms applications for the, quote, arsenal are in

16   that name.

17       All the items that are purchased on the Complaint

18   pages and I believe it's page three and four, but it's

19   the -- it's the -- I applaud the Government's effort in

20   listing out all these transactions.  It is.  It's on

21   page three and four.

22       And I applaud this because I'm sure the Court will

23   pick up on this all these transactions were made before.

24       These are not the transactions where the undercover

25   or someone's following Mr. Gregerson around to the

Detention Hearing  8-4-2016

1   sporting goods store watching him buy a long gun, these

2   are all computer purchases or online purchases on Amazon

3   or eBay.

4        What I think is significant is they were done in

5   the name Sebastian Gregerson.  They all used his charge

6   card to pay for it.  It all goes back to his local

7   address in Detroit.

8        There is no attempt to conceal those purchases or

9   to put them in another name or send them to another

10  address, none of it.

11       And the Government -- you know the way this is all

12  listed, I suggest, Your Honor, if we held this up to the

13  search warrant return which, unfortunately I don't have

14  yet, you know would be almost a mirror image, you know.

15       There's no surprise that the items that Mr.

16  Gregerson bought in his name, had sent to his house,

17  were found in his house when the Federal Government came

18  to search.  He's not trying to conceal anything.

19       With respect to danger, judge, I have a few

20  arguments about this.  I think it's crucial that Mr.

21  Gregerson does not have a prior record; I think that's

22  very significant.  I think it's important that, you

23  know, a number of governmental agencies have continued

24  to check that.

25

Detention Hearing 8-4-2016

1    What I mean by that is certainly 16 months ago when

2  the Federal Government started investigating Mr.

3  Gregerson, they were trying to lean him -- lean on him.

4  Nothing.

5    Throughout 16 months I'm sure they checked to see

6  if anything popped up that missed their radar as they

7  were tracking him on GPS following him around from the

8  sporting goods store to his house or work; nothing came

9  up.

10    Pretrial Services did the same thing.  They ran of

11  course they're independent, they ran a LIEN, nothing

12  comes up.  Every firearm purchase here at any of the

13  stores mentioned he had to submit his information and it

14  came back clean.  His CPL license; he had to pass the

15  LIEN to be able to do that.

16    So there's been, you know, multiple times criminal

17  history has been run on Mr. Gregerson and it always

18  comes back the same way, nothing.

19    So I think that's very significant.  I think it's

20  incredibly significant, as I've said, that everything

21  they took out of his house was perfectly legal.

22    It may not be your cup of tee, you may not be into

23  Rambo knives, stuff like that, but that doesn't make it

24  illegal.

25

Detention Hearing  8-4-2016

1        All right.  God forbid music CD's were illegal.  If

2   someone went into my house, I have thousands of them.

3   All right.  That's my thing, whatever.

4        Mr. Gregerson's thing in any American that doesn't

5   have a prior felony can have an interest in legal

6   firearms.  That's what we have.

7        As I've said earlier to the extent the Government

8   says that, quote, arsenal is an instrument of danger or

9   something like that, they've taken care of that, they've

10  removed it.  Gone.

11       Last thing, judge, is I think I've -- I hope I've

12  impressed the Court my skepticism with the validity of

13  statements that this undercover this mystery man or

14  women undercover agent statements that that person

15  attributes to Mr. Gregerson, but for purposes of our

16  arguments here, because I'm sure the Government was

17  accurate in putting that part of a full transcript in,

18  in their pleadings.  I'm not suggesting that the

19  Government, for instance, made up statements.  I'm not

20  at all.  I want to be very clear about that but I think

21  context is highly relevant and we lack all context.

22       We don't know when these conversations wasn't

23  perhaps the undercover person that initially brought the

24  subject up and Mr. Gregerson was responding to something

25  that perhaps was even more offensive that was said by

Detention Hearing  8-4-2016

1   the undercover person.  We don't know at this point.  I

2   don't know that, assuming that the Court has some

3   concern just about the fragments of statements that have

4   been put in the pleading, I'll address that.

5        I will, I will concede that there are statements

6   that are attributed to Mr. Gregerson that are

7   politically incorrect, that may be deemed by many people

8   to be offensive, may be highly inappropriate.

9        But, judge I'll tell you, Donald Trump does all

10  those things yet he's running for President all right.

11       So this point unpopular or politically incorrect

12  statements are not crimes, they're frowned upon there's

13  no question but we're here what crime happened and I

14  think the Government can make a case that the grenade

15  deal happened certainly for purposes of this hearing.

16  But I do not agree one iota that they made anything

17  beyond that.

18       And what concerns me is that they have

19  cherry-picked perhaps the most sensational of things

20  they can after a 16-month investigation with God knows

21  how many agents and staff working on it and they've

22  offered up to Your Honor to say look and, yet, hidden

23  everything else behind a curtain.  Context is

24  everything, judge.

25

Detention Hearing  8-4-2016

1        So for those reasons Your Honor, I would ask -- I

2    don't think -- I clearly don't think flight is an issue

3    in this case.

4        The Government has not argued strongly that

5    flight's an issue.  I understand the Government's

6    arguments with respect to danger but I think that you

7    know, I think, I think I wrote down they have four

8    arguments.

9        The first one that this case involves grenades or

10   destructive devices which can harm people.  I will

11   concede that.  The Government removed those.

12       They indicate that the number of guns in the,

13   quote, arsenal that Mr. Gregerson had is an element of

14   danger or should cause concern.  Well, they removed

15   that, too.

16       The third thing they focused on was the alleged

17   statements that they make Mr. Gregerson said to the

18   undercover, you know, whoever the hidden undercover

19   agent.  We don't know who that person is today.  And I

20   think I've made my arguments with respect to that last.

21       And finally they said, well, the weight of the

22   evidence.  I gave them that one at the start of this.

23       For purposes of this hearing a grenade deal went

24   down, okay.  Again, that goes back to the point they

25   took those away.  That alleviates the issue of danger.

Detention Hearing  8-4-2016

1      So, Your Honor, for all those reasons even with

2   respect to considerations of danger I think that under

3   the bail statute Your Honor can add conditions to bond

4   such as house arrest, home confinement if need be,

5   tethering if need be, tether with GPS.

6      But I think the Government's already got that

7   covered or at least they had it for a while during this

8   investigation.  They already had GPS.  I don't know that

9   they stopped.

10      So this Court has tools to monitor Mr. Gregerson

11   the things that the Government points to and focuses on

12   is being instruments of danger, those have all been

13   removed from Mr. Gregerson.  The Court should consider

14   that.

15      So with those out of the picture with what I

16   believe to be the holes in the, quote, context of the

17   statements they've provided, I don't think this is the

18   case the Government's suggesting to this Court that it

19   is.

20      For that reason, Your Honor, I'd ask the Court to

21   grant bond.

22          THE COURT:  Thank you, Mr. Tholen.  Ms.

23   Corken.

24          MS. CORKEN:  Yes, Your Honor.

25

Detention Hearing  8-4-2016

1        Your Honor, the Government is not arguing flight

2    risk in this case, the Government is arguing that the

3    defendant is dangerous and should be held pending trial.

4        Your Honor, Mr. Tholen repeatedly stated how in the

5    dark he is about the conversations that occurred with

6    the undercover and how we need to know the context and

7    we don't have full transcripts.

8        Well, sitting right next to Mr. Tholen is the other

9    part of the conversation, so it's not a complete mystery

10   as to what occurred during this conversation.  He could

11   certainly learn from his client.

12       He uses this argument to cast doubt on the

13   statements that were relayed by the undercover which are

14   contained in the Complaint Affidavit and the sealed

15   filing but, yet, there's no there's no specific

16   challenge to any of those statements and, yet, Mr.

17   Tholen does have the source of any challenge right with

18   him.

19       I'm suggesting that there isn't a basis to doubt

20   those statements, Your Honor, and that the context even

21   if the Court were to be given the full transcript would

22   not undermine what is stated in those documents.

23       Mr. Tholen also takes a shot at the undercover

24   officer.  He is identified as an FBI employee working in

25   an undercover capacity.  It is a federal agent.

Usa v Gregerson 16-mj-30339

Detention Hearing  8-4-2016

1        There is no *quid pro quo* for his involvement in

2    this case.  He is a professional federal agent.

3        MR. THOLEN:  Your Honor, I know the

4    Government's responding.  I object to this because now

5    it sounds like the Government's proffering information

6    during their argument or something like that.  That's

7    the problem.

8        The opportunity for the Government to put this

9    information about an undercover officer they could have

10   done it in the Complaint, they could have done it in the

11   sealed thing, they could have done it during proffer

12   here now, they didn't want to or think about it.

13       Now they're trying to back in this proffer I think

14   that's inappropriate.  She's inserting new information

15   to Your Honor.

16       THE COURT:  In the interest of having a

17   complete -- having a complete record, I'm going to allow

18   Ms. Corken to rebut the arguments that you made or the

19   suggestions that you made on the record and you may have

20   the chance to respond to what she's saying as well.

21       MR. THOLEN:  I appreciate that, Your Honor, if

22   I might, just because I'm standing in, I would continue

23   my objection.

24       It sounds as if the Government's if you will

25   vouching for the authenticity of the complete

Usa v Gregerson 16-mj-30339

Detention Hearing  8-4-2016

1   transcripts which we haven't been provided and I object.

2        In no way am I accepting as factual or valid the

3   statements that the Government has attributed to Mr.

4   Gregerson, just so the record's clear.

5            THE COURT:  All right.

6        So the record's clear, I am going to overrule your

7   objection and allow Ms. Corken to proceed and allow you

8   to respond.

9            MR. THOLEN:  Understood, Your Honor.  Thank

10  you.

11           MS. CORKEN:  Thank you, Your Honor.

12       Your Honor, Mr. Tholen also has indicated that all

13  this is explained by the fact the defendant is a

14  collector, he's a gun enthusiast he likes this stuff.

15       Well who collects grenades?  Who collects mines?

16  That's -- that is not -- those types of items aren't

17  consistent with a hobbyist.

18       In addition, Your Honor, the defendant never said

19  anything to the undercover officer about, oh, I'm

20  just -- I just wanted grenades for my collection or

21  because I, I'm, you know, a gun enthusiast, grenade

22  enthusiast.

23       In fact, he at least had some thought in his mind

24  using them against law enforcement if they ever came for

25  him, so it wasn't a purely hobby-like interest at all.

Detention Hearing   8-4-2016

1       In addition, there's an assault vest that was found

2    in which he made reference to with the undercover

3    employee that he bought pouches to contain those M67

4    grenades.

5       How many grenades do you need if you're just

6    collecting them as a collector?  Five he acquired in the

7    transaction that we know about; he had indicated he

8    wanted more.

9       In addition, he -- I think it's pretty clear from

10   the amount, the extensive amount of materials of this

11   kind that he has that this is a tremendous investment.

12   This is a lot of money.

13      This is an individual who works at Target yet

14   spends a tremendous amount of money on these items that

15   I don't believe is consistent with a hobbyist either,

16   Your Honor.

17      Mr. Tholen also, also mentions the defendant's

18   lifestyle, how he hunts.  I would just note he's -- we

19   he's never had a hunting license.  We checked with the

20   State of Michigan.

21      The items in the -- in the -- that were recovered

22   in the search warrant, the tactical vest, handcuffs,

23   spikes amassed, that's hardly consistent without outdoor

24   activities like hunting and like the explanation that

25   Mr. Tholen seems to be offering.

Usa v Gregerson 16-mj-30339

Detention Hearing   8-4-2016

1      Your Honor, in terms of Mr. Tholen's argument,

2   well, he did nothing to conceal these purchases, he used

3   the credit card in his own name.

4      I'm sure at the time he had no idea that down the

5   line anyone would be looking at those purchases.

6   There's something in the sealed filing that indicates he

7   did conceal certain activities.

8      Your Honor, Mr. Tholen seems to suggest that, well,

9   everything's removed from the residence, therefore, he's

10  no longer a danger.  But we all know how easy it is to

11  get a gun.  We know the defendant met somebody in a

12  parking lot, got a firearm.  It's not a difficult thing

13  to do.

14      And I would suggest that given all the evidence

15  that that's certainly not the solution having just

16  removed these items from him.  Obviously doesn't have

17  the grenades now, but, again, there's no -- there's no

18  indication or promise or guarantee that he couldn't go

19  out buy something dangerous tomorrow.

20      With respect to the defendant's dangerousness, Your

21  Honor, I would conclude by saying that the fact that he

22  was buying grenades, the facts that are contained in

23  that sealed filing combined certainly go to establish

24  this defendant's dangerousness and we would request that

25  he be held pretrial.

Detention Hearing  8-4-2016

1          THE COURT:  Thank you.  Mr. Tholen?

2          MR. THOLEN:  You know what, I really don't

3    have anything that was the Government responding.  I

4    can't restate my arguments any clearer.

5          THE COURT:  I'm not saying you should restate

6    your arguments, but I wanted to give you an opportunity

7    to respond --

8          MR. THOLEN:  I appreciate that very much.

9          THE COURT:  -- in any way you'd like to.

10         MR. THOLEN:  Appreciate that, Your Honor.  I

11   would just restate I think on two points with respect to

12   the undercover.

13      I think it's one issue the Government may have is

14   concealing the identity, they may want to do that for

15   protection of that individual or want to do it because

16   they want to utilize that individual in other

17   investigations, that's very common.  I understand that.

18      They've done more then that.  In fact, it wasn't

19   until the Government decided to respond to some of my

20   arguments that they start to pepper more information.

21   And I think that's telling, judge.  I know Your Honor

22   allowed it, that's fine, it's out there, it's on the

23   record, but I think it just it should cause more pause.

24      There's no reason why that information wasn't put

25   in earlier and it looks like a last gasp effort by the

Detention Hearing   8-4-2016

1  Government to resuscitate their argument.  That's my

2  comments with respect to undercover.

3       With respect to the statements I mean, good Lord 16

4  months of investigation surveillance, reportings,

5  conversations, I assume debriefings with the undercover

6  I know it's the Federal Government, I know sometimes we

7  have federal holidays.

8       I have a real hard time believing that stuff that

9  happened a month ago hasn't been put in a report

10 somewhere or transcribed.  Certainly they had the

11 ability to do that in the Criminal Complaint, at least

12 the parts they wanted to.  It's common sense.

13      So to the extent the Government stands here and

14 says, you know, the statements we put in the Complaint

15 or in the -- under seal, those are representative and

16 everything else backs that up.  That not been my

17 experience.  And, of course, I haven't seen it though

18 I've requested this information.

19      So I think you know the Court will do with that

20 what it will.  I know Your Honor's obviously been

21 involved in many of these types of cases, these are not

22 new concepts to Your Honor.  But I think it's

23 inappropriate because part of what I heard the

24 Government do is effectively vouch for, one, the

25 credibility of the undercover; and, two, vouch for the

Detention Hearing  8-4-2016

1  representation or the completeness of the cherry-picked

2  statements that they pulled out of a 16-month

3  investigation to say that, well, there's a lot more

4  where that it came from.

5      I just don't believe that as practicing for 26

6  years in this court that that's true, because I believe

7  if they had a lot more, the Complaint would be a hundred

8  pages long.

9      I've nothing further, Your Honor.  I renew my

10 request for bond.

11          THE COURT:  Thank you.  Anything further from

12 the Government?

13          MS. CORKEN:  No.

14          THE COURT:  We're going to take a 10 minute

15 recess.

16     (Whereupon court was in recess 4:05 p.m.)

17     (Whereupon court was back in session at 4:31 p.m.)

18          THE CLERK:  Court recalls case number 16-30339

19 United States versus Sebastian Gregerson.

20          MS. CORKEN:  Good afternoon, again, Your Honor

21 Kathleen Corken on behalf of the Government.

22          MR. THOLEN:  May it please the Court, David

23 Tholen on behalf of Mr. Gregerson.  He's present, judge.

24          THE COURT:  Again, would the defendant please

25 state his name again, please.

Detention Hearing  8-4-2016

1            THE DEFENDANT:  Sebastian Gregerson.

2            THE COURT:  Thank you.  You may be seated.

3        The Court has taken some time to review the written

4    submissions that were offered as well as the exhibits,

5    my notes which are copious and run several pages and the

6    charging document.

7        Just for clarification purposes and for no other

8    purpose, I would like to point out that on page six of

9    the Criminal Complaint, paragraph 16 begins as follows:

10            In recent months, Gregerson has several

11            interactions with an FBI employee operating

12            in an undercover capacity.

13        So I don't think that that identification of

14    the.U.C. was hidden or buried in any sense or that there

15    was any attempt to hide that this was not somebody

16    trying to work a case or somebody operating for any of

17    the speculative motives that were talked about in -- on

18    this record.

19        Having reviewed everything in its totality,

20    including the Pretrial Services Report, I believe the

21    case comes down to whether or not this defendant poses a

22    danger to the community.  I am not nearly as concerned

23    about risk of flight as I am the danger component.

24        In a nutshell, Mr. Tholen raises some very

25    excellent points and makes some very persuasive

Detention Hearing  8-4-2016

1    arguments.  Most interestingly is that he concedes that

2    except for the Government's Exhibit -- Exhibits 1 and 2

3    all of the other purchases were made legally and openly

4    and above board, I'm talking about the purchases

5    captured in the Government's Exhibit 3 through 30.

6         The stumbling block, obviously, are Exhibits 1 and

7    2.  Exhibit 1 was purchased, Exhibit 2 was talked about

8    in conversation allegedly as any Claymore mine that

9    defendant wished to purchase and hoped to purchase for

10   $250.

11        What does one do with these items?  What does one

12   do with a grenade which, as described by the Government,

13   has a purpose of causing injury and death and no other

14   purpose?  And why would anybody want to purchase a

15   Claymore mine which, again, is only used to cause death

16   and destruction?

17        I concede that the defendant purchased legally

18   multiple items that are used in combat that are used --

19   that are destructive items that are AK-47s, ammo and

20   weapons in large numbers.

21        But when I look at this case in its totality and I

22   have looked at it in its totality, I cannot escape the

23   conclusion that the defendant poses a danger to the

24   community.  When I reviewed the statutory factors again

25   I come to the same conclusion.

Detention Hearing  8-4-2016

1      And when I review Pretrial Services Report and

2   Recommendation for detention, I come to the same

3   conclusion and agree that this defendant does pose a

4   danger to the community; that there are pieces certainly

5   that we don't know yet about this case, but based upon

6   what we do know at this time, I am going to order

7   detention based on danger.

8            THE CLERK:  Preliminary exam will be

9   August 15th at 1:00 p.m.

10           THE COURT:  What was the date, again, Ms.

11  Bartlett?

12           THE CLERK:  August 15th.

13           MS. CORKEN:  Thank you.  Court's in recess.

14       (Whereupon hearing concluded at 4:36 p.m.)

15

16           CERTIFICATE OF TRANSCRIBER

17

18    I do hereby certify that the foregoing is a correct

19  transcription from the digital sound recording of

20  proceedings in the above-entitled matter on the date

21  hereinbefore set forth and

22  has been prepared by me or under my direction

23  to the best of my ability.

24

25  s/Carol S. Sapala, FCRR, RMR     August 8, 2016