UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    v.                          CR. NO. 16-20552

                          HONORABLE ARTHUR J. TARNOW

SEBASTIAN GREGERSON,

                Defendant.

_____/

## RESPONSE TO GOVERNMENT'S MOTION FOR INQUIRY TO RESOLVE POTENTIAL CONFLICT OF INTEREST

NOW COMES, the Defendant, SEBASTIAN GREGERSON, through his attorney, DAVID C. THOLEN, of the Federal Defender Office, and files this response to the Government's Motion For Inquiry to Resolve Potential Conflict of Interest. Counsel submits that there is no conflict of interest in Counsel's continued representation of Defendant but has no objection to the Court inquiring into this issue prior to any plea hearing in this matter.

## BACKGROUND

On July 31, 2016, Defendant was arrested during an undercover sale of legal "smoke" grenades and 5 illegal high explosive grenades. This transaction was the culmination of a 16 month investigation of Defendant. The purchase of the grenades was initiated by an undercover Government employee, UCE #1, who had been meeting with Defendant since April 2015. The undercover Government employee posed as a Muslim convert with

extensive military training and experience, who like Defendant, enjoyed firearms and outdoor activities.

On August 1, 2016, Defendant appeared on a Criminal Complaint and was ordered temporarily detained. A detention hearing was scheduled for August 4, 2016. On August 2, 2016, Defendant's case was assigned to Counsel.

During the course of his representation, Counsel has met with Defendant on no less than 15 occasions at either the Midland County Jail or FDC Milan. During these meetings, Counsel has provided discovery to Defendant, reviewed discovery with Defendant, and discussed potential pretrial motions, and the applicable statutes and Sentencing Guidelines. Counsel has filed a number of pretrial motions on Defendant's behalf, appeared at court proceedings with Defendant, and engaged in pretrial negotiations with the Government on Defendant's behalf. Those negotiations resulted in a Rule 11 Plea Agreement.

On March 7, 2017, based on the agreement between the parties, the Government notified the Court that the parties had reached a Rule 11 Plea Agreement. On that date the Court filed a Notice scheduling a plea hearing for March 30, 2017. On that same day, pursuant to the terms of the plea agreement, Counsel filed a Notice withdrawing the pending pretrial motions. Based on the above events, local media printed and ran local news stories that Defendant had "cut a deal" with the Government.

On or about March 10, 2017, upon inquiry by Deputy Defender Shanker, Counsel informed him of the following: (1) the Government had made a plea offer in Defendant's case, (2) the plea offer anticipated a guideline range of 37-46 months, (3) Defendant and

Counsel had signed the offer, and (4) the Court had a plea hearing scheduled for the end of the month.

On March 13, 2017, during sentencing in the case of United States v. Abu-Rayyan, (J. Steeh), Deputy Defender Shanker admitted Defendant's Rule 11 Plea Agreement as an exhibit. The Government raised no objection to the admission. In addition, Deputy Defender Shanker made comparative statements or arguments which referenced Defendant's charges and the Government's plea offer. The Government made no objection to these statements. Finally, Deputy Defender Shanker raised the question of apparent racial bias or treatment in the Government's different treatment of, "an Arab Muslim from Dearborn as opposed to a Caucasian from the suburbs."   (Tr. 3/13/17 - Sentencing Hearing, Shanker at p. 25). Counsel was aware from news reports that Defendant's case had been referenced during this proceeding but did not know to what extent. Counsel did not know, authorize, or endorse the admission of the Rule 11 Plea Agreement or the extent of comments and arguments made by Deputy Defender Shanker.

On March 20, 2017, Counsel met with Defendant at FDC Milan. During the course of this meeting, Counsel informed Defendant that his case and plea agreement had been referenced during the Abu-Rayyan sentencing hearing. Counsel informed Defendant that he did not know the extent of the comments. On March 21, 2017, Counsel was informed by his Supervisor that Defendant's Rule 11 Plea Agreement had been admitted as an exhibit and that Deputy Defender Shanker had made comparative arguments referencing Defendant's case. On March 23, 2017, Counsel received and reviewed the sentencing transcript in the

3

Abu-Rayyan case.  On March 24, 2017, the Government filed its motion for inquiry to resolve a potential conflict of interest.

On March 27, 2017, Counsel met with Defendant at FDC Milan and provided him with a copy of the transcript and the Government's motion.   Counsel explained Defendant could request a new attorney to avoid any potential conflict of interest or Defendant could continue with Counsel as his attorney and waive any potential conflict of interest.  Defendant indicated that although he was greatly disturbed by the nature of attorney Shanker's statements, he wished to have Counsel continue to represent him in this matter and would respond to any Court inquiry on this matter.

Last night, the Government provided Counsel with a transcript of the continued sentencing hearing in the Abu-Rayyan case.  Counsel has reviewed that transcript but has been unable to review it with Defendant due to his transport between FDC Milan and local custody.  Counsel will review it with Defendant prior to the plea hearing in this matter.  At the continued sentencing hearing, attorney Shanker again made comparative statements and referenced Defendant's case and his plea agreement.  Again, the Government chose not to object to any of these statements, despite the "conflict" motion filed in Defendant's case.  In Counsel's view these merely reiterate the statements made at the previous sentencing hearing with one notable exception.  Apparently, the Government suggested that the Government's plea offer in Defendant's case involved potential cooperation.  Counsel unequivocally states this is untrue and that Defendant's Rule 11 Plea Agreement does not anticipate or obligate him to cooperate in any fashion.  The Government's statements were made in reckless

4

disregard of the truth and cause Counsel some degree of concern due to Defendant's present

incarceration status.  This matter can also be addressed at the inquiry hearing.

## II.

## LAW AND ARGUMENT

The Sixth Amendment of the Constitution guarantees a criminal defendant the right

to effective assistance of counsel. <u>McMann v. Richardson,</u> 397 U.S. 759 (1970). An actual

conflict of interest that adversely affects counsel's performance will deprive a defendant of

this right.  <u>Cuyler v. Sullivan,</u> 446 U.S.  335 (1980).  This Circuit has held that it is not

necessary to show that the conflict caused the defendant to lose his or her case.  <u>McFarland v.</u>

<u>Yukens,</u> 356 F.3d 688, 705 (6th Cir. 2004).  All that is necessary is that an actual conflict

of interest adversely affected the attorney's performance. <u>Id.</u>   Prejudice is presumed when

counsel is burdened by an actual conflict of interest.  In those circumstances, counsel

breaches the duty of loyalty, perhaps the most basic of counsel's duties.  <u>Boykin v. Webb,</u> 541 F. 3d

638, 643 (6th Cir. 2008).  The Sixth Circuit has distinguished among different situations in which a

lawyer's  representation  of  various  clients  compromises  his  duty  of  loyalty:  joint  and  dual

representation refer to simultaneous representation occurring in the same proceeding, while multiple

representation  refers  to  simultaneous  representation  in  separate  proceedings.    Successive

representation occurs where defense counsel has previously represented a co-defendant or trial

witness.  <u>McFarland v. Yukins</u>, 356 F.3d 688, 701 (6th Cir. 2004).

An attorney representing two defendants in a criminal matter is in the best position

professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Harris v. Carter, 337 F.3d 758, 764 (6th Cir. 2003). Defense attorneys have an obligation, upon discovering a conflict of interest, to advise the court at once of the problem. Id.

When a trial court becomes aware of a potential conflict of interest, it is obligated to pursue the matter even if counsel does not. United States v. Hoffman, 926 F. Supp. 659, 669 (E.D. Tenn. 1996). In cases where a defendant or defense counsel makes a timely objection to joint representation based on an asserted conflict of interest and the trial court fails to inquire as to whether the conflict warrants the appointment of separate counsel, prejudice is presumed and reversal is automatic. Harris v. Carter, 337 F.3d 758, 762 (6th Cir. 2003).

Despite a conflict, a defendant can waive the right to conflict free counsel. Sometimes defendants prefer joint representation even if there is the possibility of a conflict. McFarland v. Yukins, 356 F.3d 688, 701 (6th Cir. 2004), citing Wheat v. United States, 486 U.S. 153, 159 (1988). Defendants have a countervailing interest in being allowed to proceed with counsel of their own choice. Id. Waiver of the right to conflict-free counsel must be voluntary and constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. Hoffman, at 669.

**A.**

**The Federal Defender Office's Continued Representation of Defendant Does Not Create a Conflict of Interest**

In its motion, the Government argues that a potential conflict of interest exists because (1) attorney Tholen and attorney Shanker appear to have exchanged Gregerson's "confidential information" to benefit another client, and (2) attorney Shanker characterized Gregerson as being

6

more dangerous and deserving of a greater sentence than Abu-Rayyan.  ( R. 42: Government

Motion, p. 4).   The Government has argued that the above acts "conceivably" implicate the

Michigan Rules of Professional Conduct, however , the Government never asked for Counsel's

version of events before filing their motion. Counsel is deeply disturbed by the suggestion that he

has in any way compromised his duty of loyalty to Defendant.  Counsel finds it inexplicable that

the Government is seeking his removal as Defendant's attorney, based on attorney Shanker's

statements and actions, when it did not object during that sentencing hearing or file any similar

motion in the Abu-Rayyan case.

### (1)

### Counsel Did Not Reveal Confidential Information

The general information Counsel revealed about the plea agreement was not confidential

information.  As previously stated, upon inquiry by Deputy Defender Shanker, Counsel

informed him of the following: (1) the Government had made a plea offer in Defendant's

case, (2) the plea offer anticipated a guideline range of 37-46 months, (3) Defendant and

Counsel had signed the offer, and (4) the Court had a plea hearing scheduled for the end

of the month.  Counsel disagrees with the Government's proposition that this information

was "confidential" or "nonpublic".  None of this information was obtained by Counsel

from his client.  The Rule 11 Plea Agreement and the Guideline Worksheets were wholly

drafted by the Government.  The Government never sought or even suggested that the

plea agreement should be under seal.  Finally, by the time Counsel informed attorney

Shanker of the above information, news media had already reported on the existence of

Defendant's plea agreement and his scheduled plea hearing before the Court. Therefore, this information was already made public.

**(2)**

**Attorney Shanker's Comparative Statements Do Not
Create an Actual Conflict of Interest**

To be clear, Counsel did not know, authorize, endorse, or condone the comparative statements made by attorney Shanker during his client's sentencing hearing. Were the situation reversed, Counsel would not have made any such comparisons. Nevertheless, as distasteful as they may be, attorney Shanker's statements do not create any actual conflict of interest in Counsel's continued representation of Defendant.

Michigan Rule of Professional Conduct 1.7 prohibits lawyers from representing clients where that representation may be "directly adverse to… [or] materially limited by the lawyer's responsibilities to another client." Mich. R. Prof'l Conduct. 1.7. Rule 1.10 prohibits attorneys who are associated together as a "firm" from representing a client where any of them individually doing so would violate certain of the other rules, including 1.7.

Mirroring the ABA standards, the commentary to Mich. Rule 1.7 states that, with respect to acting directly adverse to a client, "a lawyer ordinarily may not act as an advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." The commentary goes on to state, however, that "simultaneous representation

in unrelated matters of clients whose interests are *only generally adverse*, such as competing economic enterprises, does not require consent of the respective clients." Here, there is no question that attorney Shanker was not acting as an advocate against Mr. Gregerson in another case, as that term appears in this subsection of the rule. Advocacy in this sense means in direct opposition, and the only body that can act in direct opposition to our clients is the government. Therefore, the government's reference to this commentary is misplaced.

More apt is the commentary to subsection (b), the materially limiting clause. There, the rules envision that "[l]oyalty to a client is also impaired where a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client." While this subsection is more applicable to this situation, it is nevertheless inapposite in the face of the type of organization the Federal Defender Office comprises. Unlike attorneys at private law firms, "[n]either government prosecutors nor government public defenders have any personal stake in whether an office colleague or co-employee is successful in representing a client . . . Instead, a public defender's office is comprised of individual attorneys exercising individual judgment in representing their clients." Taylor v. Simpson, No. 06-181, 2014 WL 4928925, *40 (E.D. Ky. Sept. 30, 2014). Thus, the "premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyers associated," which underlies the imputed structure, because economic

incentives underlying subsection (b) of Rule 1.7 do not implicate the FDO in the same way they would implicate attorneys in a private defense firm, who rely on their clients continued retention for their firm's income. *Accord* United States v. Trevino, 992 F.2d 64, 66 n.1 (5th Cir. 1993) ("The potential for conflict is even less in a public defender's office for a simple reason: no attorney there depends upon the clients for his/her salary. As a result, loyalty to one's own client cannot take a back seat to the financial qualms posed by defendant's and codefendant's relative abilities to pay."); Hanna v. Bagley, No. 03-801, 2014 WL 1342985, *3 (S.D. Ohio Apr. 3, 2014) ("because public defenders are salaried, the compensation of none of them . . . will be affected by the outcome of this case.").

It is noticeable that the government's motion failed to articulate with any specificity the way in which Defendant was or would be prejudiced by the other attorney's comments. The Supreme Court has cautioned courts to avoid conflating actual or even potential conflicts with "vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation.'" Mickens v. Taylor, 535 U.S. 162, 169 (2002) *quoting* Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).

Even if the government had attempted to articulate a possible conflict, it would expose the fact that the conflict is speculative at best, and speculative conflicts are insufficient. *See,* United States v. McCullah, 76 F.3d 1087, 1099 (10th Cir. 1996) (alleged conflict of one federal defender representing witness never called in the other federal defender client's trial was to speculative and hypothetical).

10

First, obviously, the other attorney's statements certainly did not work a detriment to his client (Abu-Rayyan) on behalf of Defendant, and frankly had he not raised these issues in deference to Defendant he could have been considered working under his own conflict of interest to the detriment of his own client.

The only imaginable conflict that could arise from this situation is that the attorney's comments might somehow be used during Defendant's plea or sentencing hearing in a way that inures to his detriment. But that information certainly would not be used by you to inure to his detriment, but rather, if at all, by the government.

Moreover, there is no question that Counsel's duty extends only to his client, Defendant, and nothing stated by the other attorney would prevent Counsel from vehemently arguing against any of these apparent characterizations and advocating zealously on behalf of his client. *See,* Mickens, 535 U.S. at 172 (no conflict where the attorney was not "influenced in his basic strategic decisions" *quoting* Wood v. Georgia, 450 U.S. 261, 272 (1981)).

In addition, Defendant has already accepted the Government's Rule 11 Plea Agreement in his case and acted within his obligations under that agreement. The agreement contemplates his guidelines and sets a sentencing cap at 60 months. Defendant has acted in reliance on the agreement by (1) withdrawing his pending motions, (2) refraining from filing additional motions, and (3) signing Rule 20 paperwork to transfer the Eastern District of Virginia case to this Court. Attorney Shanker's comparative statements do not compromise the integrity of the Rule 11 Plea Agreement.

11

Finally, Defendant is not appearing before the same judge as the other client, and therefore any risk of taint as to his characterization ahead of his own plea and sentencing evaporates in the face of a presumably independent judiciary that is tasked with evaluating each defendant upon his or her own merits as presented to the court.

For all of these reasons, Counsel submits that no actual or potential conflict of interest arises from attorney Shanker's statements impugning Defendant in the attempt to get his own client a better sentence.

**B.**

**Assuming Arguendo a Potential Conflict Exists, Defendant is Entitled
to his Counsel of Choice and Can Waive any Conflict**

As previously discussed, Counsel does not believe any actual conflict of interest exists in his continued representation of Defendant.  However, as part of his duty toward his client, Counsel has reviewed the Government's motion, the Abu-Rayyan sentencing transcript, and fully discussed this issue with Defendant.  Defendant is deeply disturbed by the comparative statements made by attorney Shanker.  Counsel has explained, and Defendant has accepted, that, attorney Shanker acted without Counsel's knowledge, authorization, or endorsement.  Both Defendant and Counsel categorically deny the substance of these statements, find them to be unsubstantiated opinions of attorney Shanker, and believe them to be unnecessarily inflammatory nonsense.  Counsel has emphasized to Defendant that it is wholly his decision whether to request a new attorney from outside the Federal Defender Office or continue with Counsel representing him in this matter.  Defendant has indicated that he wishes to continue with Counsel as his

attorney in this matter.  In the event the Court finds a potential conflict of interest,

Defendant has been informed and will make a knowing and voluntary waiver of any

potential conflict before this Court.


### III.

### CONCLUSION

WHEREFORE, for all of the reasons set forth herein, Defendant submits that there

is no conflict of interest in Counsel's continued representation of Defendant, however  he

does not object to a Court inquiry to resolve this matter prior to conducting the plea

hearing in this matter.

Respectfully submitted,

**FEDERAL DEFENDER OFFICE**


/s/ David C. Tholen
Attorney for Defendant
613 Abbott, 5th Floor
Detroit, Michigan   48226
(313) 961-4150
E-Mail: david-tholen@fd.org
Dated: March 27, 2017            P43836

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,

     v.                             CR. NO. 16-20552

                                  HONORABLE ARTHUR J. TARNOW

SEBASTIAN GREGERSON,

                  Defendant.

_____/

**<u>CERTIFICATE OF SERVICE</u>**

       I certify that on March 29, 2017, I electronically filed the foregoing paper with  the Clerk of the Court using the ECF system which will send notification of  such filing to the following:

                  Cathleen Corken
                  AUSA

                          <u>/s/ David C. Tholen</u>
                          Attorney for Defendant
                          613 Abbott, 5th Floor
                          Detroit, Michigan   48226
                          (313) 961-4150
                          E-Mail: david-tholen@fd.org
                          P43836

Dated: March 29, 2017