UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        Cr. No. 16-20552

        v.                              HONORABLE ARTHUR J. TARNOW

SEBASTIAN GREGERSON,

        Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

On December 1, 2016, Defendant was charged by Superseding Indictment with Receipt of Explosive Materials with Intent to Harm, 18 U.S.C. 844(d); Unregistered Possession of a Destructive Device, 26 U.S.C. 5861(d) (M67 grenades) ; Unlicensed Receipt of Explosive Materials, 18 U.S.C. 842(a)(3)(A); and Unregistered Possession of a Destructive Device, 26 U.S.C. 5861(d) (37mm flares and buckshot).

On March 30, 2017, Defendant pled guilty to Count Two of the Superseding Indictment, Unregistered Possession of a Destructive Device, 26 U.S.C. 5861(d) (M67 grenades), pursuant to a Rule 11 Plea Agreement. In the plea agreement, the parties anticipated a sentence range of 37-46 months. This range was based on an Offense Level of 21 (Base - firearm under 26 U.S.C. 5861(d)  + 18, 8-24 firearms +4, destructive device +2, acceptance -3) and Criminal History Category of I (no prior criminal convictions).

1

Under the agreement, the parties agreed that the sentence shall not be less than 37 months or greater than 60 months.  The Government reserved its right to advocate for a 14 month upward variance to 60 months.  See, (Rule 11, p. 5).

In the Presentence Report, the Probation Department has calculated the same sentence range of 37-46 months, based on the same calculations that the parties anticipated in the Guideline Worksheets.  See, (Presentence Report, page 19, paragraph 87).  The Probation Department has also noted that, "a sentence within the guideline range would protect the public from further crimes of the Defendant."  See, (Presetnence Report, p. 22-23, paragraph 110) (emphasis added).  Defendant accepts these Guideline calculations and the Probation Department's position that a "within the guideline range" sentence is appropriate.

Defendant respectfully requests this Court to (1) accept the Rule 11 Plea Agreement, and (2) impose a sentence of 37 months imprisonment, concurrent to any sentence imposed in #17-20235, based on the sentencing factors in his case.

I.

**THE SENTENCING FACTORS IN DEFENDANT'S CASE
WARRANT A SENTENCE OF 37 MONTHS IMPRISONMENT**

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. Koon v. United States, 116 S. Ct. 2035, 2053 (1996).

With respect to the Guidelines, In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court ruled that the Sentencing Guidelines no longer have the force and effect of law and are "effectively advisory". <u>Id.</u> at 743. <u>Booker</u> returns substantial discretion to the sentencing judge to depart above and below the Guidelines range so long as such sentences are reasonable. <u>United States v. Hines</u> 398 F.3d 713, 720 (6th Cir. 2005). Post-<u>Booker</u>, the district court is empowered with greater discretion to consider the factors provided in 18 U.S.C. 3553 (a) in determining a proper sentence. That section provides the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection

The Sixth Circuit has noted that, "we may apply a rebuttable presumption of reasonableness to sentences within the Guidelines." <u>United States v. May</u>, 518 Fed. Appx. 423, 425 (6th Cir. 2013), citing <u>United States v. Pearce</u>, 531 F.3d 374, 384 (6th Cir. 2008). While a district court may not presume that the range is reasonable, a properly calculated within-Guidelines sentence will be afforded a rebuttable presumption of reasonableness on appeal. <u>United States v. Haj-Hamed</u>, 549 F.3d 1020, 1025 (6th Cir. 2008), citing <u>United States v. Williams</u>, 436 F.3d 706, 708 (6th Cir. 2006). The presumption applies if the district court acknowledged that the Guidelines are advisory, discussed the relevant 3553(a) factors, explained its reasons for imposing a within-Guidelines sentence, and did not act arbitrarily or rely on impermissible factors. <u>Id</u>, citing <u>United States v. Madden</u>, 515 F.3d 601, 613 (6th Cir. 2008).

Defendant submits that, in light of all of the above, a within-Guidelines sentence

would be reasonable and sufficient, but not greater than necessary, to comply with the purposes set forth in 3553 (a).

## A.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances surrounding the actual offense conduct warrant a sentence of 37 months imprisonment. Defendant submits the offense conduct involved his illegal purchase of unregistered destructive devices from an undercover FBI agent which was facilitated by the undercover FBI employee who had been investigating Defendant. The court in determining the particular sentence to be imposed shall consider the nature and circumstances of the offense. See, 18 U.S.C. 3553.

Defendant submits that throughout this prosecution, the Government has systematically overstated its case and attempted to support its pre-conceived theory of the case by cherry-picking facts, frequently out of context, and ignoring any plausible alternative explanation to the events in question.

The charges against Defendant stem from a 16 month investigation of Defendant which culminated in his arrest at an undercover sale of grenades, on July 31, 2016. According to the Government, in April 2015, Defendant came to the attention of the FBI due to information from a confidential source, "who is in a position to have significant knowledge of his activities." ( See, Criminal Complaint, p. 2, paragraph 5.). This confidential source alerted the FBI that Defendant had both grenades and bazookas.

However, neither of these items were recovered during the search of his residence or at any other time during the investigation.

In addition to the Confidential Source, the Government utilized an FBI Undercover Employee (UCE #1) as part of its investigation. Beginning in April 2016, and continuing until Defendant's arrest on July 31, 2016, UCE #1 participated in a number of recorded meetings and/ or telephone calls with Defendant. During this period, UCE #1 met with Defendant at the Henry Ford Community College; ate meals with Defendant at local restaurants; visited with Defendant and his sons at Defendant's residence; legally purchased a handgun from Defendant; and ultimately arranged for the alleged purchase of legal smoke grenades and the illegal grenades which form the basis for the instant charges.

UCE #1 was a direct participant in the planning and completion of the controlled/ undercover sale of the grenades in this case. Defendant had no prior felony convictions and had never purchased or attempted to purchase grenades or any explosives prior to the instant investigation. The Undercover Government Employee (UCE #1) was the party who initiated the discussions involving the purchase of grenades and who devised the plan to obtain grenades.

After Defendant accepted the illegal grenades, he was arrested. During the search of his vehicle, agents recovered a handgun and a car seat holster. (Government's Sentencing Memorandum, Ex. J.28). Defendant was legally entitled to carry a firearm in his vehicle because he had a valid CPL license. Later the same day, while Defendant was in custody, federal agents searched his residence and recovered a number of firearms, ammunition, 37mm flares, 37 mm gas gun/ flare gun , knives, military/hunting clothing, and camping equipment. (Government's Sentencing Memorandum, Ex. J.2-26).

Notably, the firearms were recovered in a gun locker or safe in his bedroom closet. (Government's Sentencing Memorandum, Ex. J.1). Defendant was lawfully entitled to purchase and possess <u>all</u> of these items. The Government's investigation revealed that these items, with the exception of the Glock pistol, were properly purchased in Defendant's name and had not been altered in any way to make them "illegal."

Defendant engaged in pretrial plea negotiations which resulted in a Rule 11 Plea Agreement. As part of that agreement, he withdrew his pretrial motions, agreed to relevant conduct being included in his Guideline calculations, and agreed to the transfer of the Eastern District of Virginia case. These negotiations resulted in Rule 11 Plea Agreements in both cases. Defendant's guilty pleas saved the Government the expense and resources associated with two federal criminal trials in two jurisdictions.

Finally, Defendant acknowledges his error in committing the instant offense. He is remorseful for what he did and he accepts responsibility for his actions as demonstrated by his guilty plea before this Court. Defendant submits that these factors warrant a sentence of 37 months imprisonment.

**B.**

**HISTORY AND CHARACTERISTICS OF DEFENDANT**

Defendant's history and characteristics warrant a sentence of 37 months imprisonment. The court, in determining the particular sentence to be imposed, shall consider the history and characteristics of the defendant. <u>See,</u> 18 U.S.C. 3553.

As indicated in the Presentence Report, Defendant is 30 years old with no prior state or federal, felony or misdemeanor convictions. This case and the related case, #16-20552, will represent his first felony convictions.

In addition, Defendant identifies himself as a "prepper". The Oxford dictionary defines a prepper as, "a person who believes a catastrophic disaster or emergency is likely to occur in the future and makes active preparations for it, typically by stockpiling food, ammunition, and other supplies." https://en.oxforddictionaries.com/definition/prepper. Preppers are also known as "long term planners" . When his residence was searched, agents observed stockpiles of food and water which were not seized as they were not illegal. In addition to firearms and ammunition, the agents found and seized a camp hatchet, a recurve bow, tents, backpacks, and items of cold-weather clothing. Defendant collected these items over time and possessed them as part of his "prepper" lifestyle. Defendant also prepared flyers for classes that he intended to teach to like minded individuals. The Government recovered the flyers on his home computer. ***(See, Ex. A Emergency Preparedness Flyer)***.

In addition, Defendant is Muslim and a devout believer in his faith. As indicated in the Presentence Report, Defendant was introduced to the Muslim faith through a number of friends when he was in high school. Following high school he began practicing the Muslim faith. He has practiced this faith over the last ten years. His faith drew him to his wife and they were married in a religious ceremony in March 2011. In following his faith, Defendant observes daily prayers, follows religious holidays, has learned arabic, and wears a long beard as a sign of his faith. Defendant's faith also guides his feelings toward domestic issues in the United States as well as the ongoing conflict in the Middle East. Although not politically correct, under Defendant's faith, homosexuality is not tolerated. As such, he does not accept or condone such conduct. However, Defendant has never harmed any such individuals. Furthermore, as a Muslim, Defendant

does feel he is part of a minority in the United States and subject to local prejudice and undue scrutiny.

     Finally, Defendant has a longstanding interest in world history, the Middle East, and military history.  He has collected and read a number of books on military tactics and training.  He also enjoys military-type movies and frequently discussed them with the undercover FBI employee.  During the time he was being investigated, Defendant was enrolled at Henry Ford College taking a Homeland Security class on Tuesdays and Thursdays.  The Government interviewed Defendant's instructor on a number of occasions and reviewed some of Defendant's class work.  (FBI-302, 9/3/15 interview).  His instructor told the FBI that Defendant, "sat in the front of the class, is fully engaged, and appears very knowledgeable on the subject matter."  During a subsequent interview, Defendant's instructor noted, "Sebastian showed particular propensity toward world events, indicating he obtains his world news from foreign news sources for an independent perspective."  (FBI-302, 9/10/15 interview).  Defendant also shared his interest in being an analyst for the FBI based on his knowledge and interest in the Middle East and his command of Arabic.  Contrary to the Government's repeated arguments that Defendant is aligned with ISIS, Defendant downloaded Dabiq and specific articles from the Long War Journal site to educate himself on those events.  As described on wikipedia, the "Long War Journal", "is an American news website, also described as a blog, which reports on the war on terror.  The site is operated by Public Multimedia Incorporated (PMI), a non-profit media organization established in 2007."
Https://en.wikipedia.org/wiki/Long_War_Journal.

## C.

## NEED TO PROVIDE PUNISHMENT, PROTECT THE
## PUBLIC, AND TO PROVIDE OTHER CORRECTIVE TREATMENT

A sentence of 37 months imprisonment is sufficient to provide punishment, protect the public, and to provide Defendant with other corrective treatment. Defendant has no prior convictions and has never been to prison. A sentence within his guidelines is significant by any measure. It has even greater impact on an individual who has never served any significant period of incarceration.

Defendant has been detained since his arrest on July 31, 2016. During this period he has been housed at the Midland County Jail, the Dickerson Detention Facility, and FDC Milan. By the date of sentencing, he will have been detained 13 months. This period of pretrial incarceration has certainly punished him for the offense conduct. In addition, as a pre-sentence detainee, he does not have access to vocational, educational, or rehabilitative programs available in federal prisons.

Finally, Defendant knows that he will be required to serve a substantial term of imprisonment <u>beyond</u> what he has already served. Defendant respectfully requests that the Court recommend designation to FCI Milan so that he is geographically close to his family to enable regular visitation. In addition, Defendant would like the opportunity to participate in the UNICOR program while serving the remainder of his sentence. Therefore, a sentence of 37 months imprisonment is, "sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, and punish Defendant for the offense conduct.

## II.

## THE ENHANCEMENT OF DEFENDANT'S OFFENSE LEVEL AND GUIDELINE RANGE DUE TO THE INCLUSION AS RELEVANT CONDUCT OF HIS POSSESSION OF 10 37MM FLARES AND BUCKSHOT WARRANTS A SENTENCE WITHIN THE GUIDELINE RANGE

Under the Rule 11 Plea Agreement, the parties anticipated a Guideline range of 37-46 months.  This range was based upon Defendant's guilty plea to Count Two - Unregistered Possession of a Destructive Device, 26 U.S.C. 5861(d) (M67 grenades). However, under the terms of the Rule 11 Plea Agreement, Defendant also agreed to the inclusion in his guideline calculations of his possession at his residence of ten (10) 37mm flares and buckshot.  See (Rule 11 at p. 4).    This is the conduct alleged in Count Four - Unregistered Possession of a Destructive Device, 26 U.S.C. 5861(d) (37mm flares and buckshot).

As indicated in both the Worksheets and the Presentence Report, Defendant's Offense Level was calculated pursuant to U.S.S.G. 2K2.1.  As a Specific Offense Characteristic, under U.S.S.G. 2K2.1(b)(1), the Guidelines apply enhancements if the offense involved three or more firearms.  The federal definition of "firearm" includes any destructive device.  See 18 U.S.C. 921, and 18 U.S.C. 921(3)(D).

Under the statute, a destructive device includes any combination of parts either designed or intended for use in converting any device into a destructive device and from which a destructive device may be readily assembled.  United States v. Crocker, 260 Fed. Appx. 794, 797 (6th Cir. 2008).  To qualify under the statute, the Court does not require

that the destructive device operate as intended. Id., citing United States v. Langan, 263 F.3d 613, 625 (6th Cir. 2001); United States v. Unthank, 107 Fed.Appx. 625, 629 (6th Cir. 2004). It is sufficient for the government to show that the device was readily convertible to a destructive device. Id. Citing Langan, 263 F.3d 613, 625 (6th Cir. 2001).

Under U.S.S.G. 2K2.1(b)(1), if the offense involves 3 - 7 firearms, add +2 levels . See 2K2.1(b)(1)(A). If the offense involves 8-24 firearms, add +4 levels. See 2K2.1(b)(1)(B). In Defendant's case, inclusion of the 10 x 37mm flares increased the number of firearms to "8-24 firearms" and his Offense Level was enhanced +4 levels. The resulting range without the inclusion of the 10 x 37mm flares would be 30-37 months, based on an Offense Level of 19 and Criminal History Category I.

What is noteworthy in the instant case is that the 37mm flares and buckshot were both recovered in their purchased state. The 37mm flares were submitted to the FBI lab for examination. The examiner concluded, "It is the opinion of this explosives and Hazardous Devices Examiner that present in the submitted specimens are ten (10) pyrotechnic projectiles, commonly referred to a flares. These items, or kits from which these items can be constructed, are available for purchase at some firearm and ammo stores. These pyrotechnic projectiles are designed to be fired from a 37 mm launcher and explode after a short time delay producing light. See, (FBI Lab Report dated January 20, 2017). The lab report also notes that, (1) only one item was disassembled, "due to the observed visual and physical similarities of each item," (2) the item contained, "a low explosive propelling charge." of "2.8 grams of black powder," (3) the items were in a

white box with a return address at American Specialty Ammo, 9 South Main Street, Rittman, OH 44270. The examiner did not observe any signs of pre-examination tampering with the flares.

Although it is conceivable that the 37 mm flares and shotgun shells could be dismantled and reconstructed into unregistered destructive devices, they were both recovered in a fully intact condition and were legally purchased by Defendant. With recognition that the same +4 level enhancement would apply if (1) the flares had been fully reconstructed into destructive devices, or (2) were partially reconstructed into destructive devices, or (3) were simply found disassembled, Defendant submits the "untampered" state of the 37 mm flares and shotgun shells warrants consideration by the Court.

## III.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests this Honorable Court to (1) accept the Rule 11 Plea Agreement, and (2) impose a sentence of 37 months imprisonment to run concurrent with any sentence imposed in case #17-2235 which is also before this Court.

                                        Respectfully Submitted,

                                        **FEDERAL DEFENDER OFFICE**

                                        /s/ David C. Tholen
                                        Attorney for Defendant
                                        613 Abbott, 5th Floor
                                        Detroit, Michigan   48226
                                        Phone: (313) 967-5542
                                        E-mail: david_tholen@fd.org
Date: August 28, 2017                        P43836

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Cr. No. 17-20235

        v.                        HONORABLE ARTHUR J. TARNOW

SEBASTIAN GREGERSON,

        Defendant.
_____/

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

        Cathleen Corken
        Assistant U.S. Attorney

I also certify that on this date, the foregoing paper was provided to the following:

        Julie Grewe
        U.S. Probation Officer

        /s/ David C. Tholen
        Federal Defender Office